UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA            :

   -v-                                      :

JOSEPH COROZZO,                      :
     a/k/a "JoJo,"
BARTOLOMEO VERNACE,                  :
     a/k/a "Bobby,"
ALPHONSE TRUCCHIO,                   :            11 Cr. 12
LOUIS MASTRANGELO,
MICHAEL ROCCAFORTE,                  :
     a/k/a "Roc,"
ANTHONY MOSCATIELLO,                 :
VINCENZO FROGIERO,
     a/k/a "Vinny Carwash,"            :
TODD LABARCA,
FRANK BELLANTONI,                    :
     a/k/a "Meatball,"
CHRISTOPHER COLON,                   :
CHRISTOPHER REYNOLDS,
     a/k/a "Burger,"                  :
SALVATORE TORTORICI,
MICHAEL RUSSO,                       :
     a/k/a "Mush,"
ANTHINO RUSSO,                       :
     a/k/a "Hootie,"
FRANK ROCCAFORTE,                    :
JOHN BRANCACCIO,
     a/k/a "Johnny Bandana,"          :
SALVATORE ACCARDI,
KEITH CROCE,                         :
SEAN DUNN,
ROBERT BUCHOLZ,                      :
MICHAEL KUHTENIA,
     a/k/a "Jello,"                   :

             Defendants.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

<u>GOVERNMENT'S MOTION FOR DETENTION</u>

The Government respectfully submits this memorandum in support of its motion for detention of the following defendants: (1) Joseph Corozzo; (2) Bartolomeo Vernace, (3) Alphonse Trucchio; (4) Louis Mastrangelo; (5) Michael Roccaforte; (6) Anthony Moscatiello; (7) Vincenzo Frogiero; (8) Todd LaBarca; (9) Christopher Reynolds; (10) Salvatore Tortorici; (11) Anthino Russo; (12) John Brancaccio, and (13) Keith Croce.[1]

Each of the defendants for whom the Government seeks detention poses a risk of flight, a danger to the community, or both.  The relevant bail factors, coupled in many cases with the statutory presumption of detention, establish that the detention of each named defendant is appropriate and necessary.

**I.     Applicable Law**

**A.     The Bail Reform Act: 18 U.S.C. § 3142**

The Bail Reform Act lists four factors relevant to detention analysis:  (1) the nature and circumstances of the crimes charged, (2) the history and characteristics of the defendant, (3) the seriousness of the danger posed by the defendant's release, and (4) the evidence of the defendant's guilt.  <u>See</u> 18 U.S.C. § 3142(g).

In certain cases, "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required for the safety of the community."  <u>See</u> 18 U.S.C. § 3142(e)(3).  This presumption arises where a defendant is charged with a violation of a narcotics statute carrying a maximum sentence of ten or more years'

---

[1]     The Government also may seek detention for other defendants not listed here, depending in part on the substance of pre-trial reports and strength of any proposed bail packages.

imprisonment (see 18 U.S.C. § 3142(e)(3)(A)) or a firearms offense in violation of 18 U.S.C. § 924(c) (see 18 U.S.C. § 3142(e)(3)(B)).

**B.    Second Circuit Law**

The Second Circuit and its district courts routinely consider the fact that a defendant holds a position in organized crime — and hence has the ability to direct the criminal conduct of others — as a significant factor in favor of detention.  Most recently, in United States v. Marino, 2010 WL 4009104 (2d Cir. Oct. 14, 2010), the Second Circuit affirmed an order of detention by the District Court of Daniel Marino, who sat — along with Bartolomeo Vernace, one of the defendants in the case here — on a three-member panel presiding over the Gambino Family's affairs.  The Court held that "the precise title he [Marino] held – whether boss, street boss, or captain – is of little significance to the danger determination.  The fact of his past violent activities, together with his ongoing ability to direct the conduct of criminal confederates, provided clear and convincing evidence of the present danger he posed."  Id. at *2.   The Court also affirmed the detention order because Marino's "role in the Gambino crime family signaled that he had not separated himself from the criminal enterprise for which he carried out violence and obstruction and confirmed that he continued to be in a position to call on enterprise members to carry out violent activities, among other crimes, on his behalf."  Id. at *3.  See also United States v. Onofrio Modica, et al., 09 Cr. 1243 (LAK) (detaining various Gambino Family members and associates, including Thomas Orefice and Dominick Difiore, on danger grounds based in part on mafia participation); United States v. Gotti, 219 F. Supp.2d 296 (E.D.N.Y. 2002) (Gambino Family Acting Boss Peter Gotti detained as danger to the community), aff'd United States v. Ciccone, 312 F.3d 535 (2d Cir. 2002); United States v. DeFede, 7 F. Supp.2d 390, 393

(S.D.N.Y. 1998) (Luchese Family Acting Boss Joseph DeFede detained as danger to the community); United States v. Agnello, 101 F. Supp.2d 108, 116 (E.D.N.Y. 2000) (Gambino Family Soldier Carmine Agnello detained as danger to the community); United States v. Cicale, 2006 WL 2252516 at *6 (E.D.N.Y. 2006) (Bonanno Family associate Stefan Cicale detained as danger to the community); United States v. Santora, 225 Fed. Appx. 21, 22 (2d Cir. 2007) (upholding the District Court's holding that "Santora was a danger to his community because he was an acting underboss in the Bonanno crime family and he had committed a crime of violence . . . as more than adequate to support a finding that 'no condition or combination of conditions will reasonably assure' the safety of the community").

The Second Circuit has repeatedly rejected "elaborate" bail packages for dangerous defendants, including members of organized crime families shown to be involved in violent criminal activities.  See Marino, 2010 WL 4009104 and 09 Cr. 1243 (LAK) (rejecting multi-million dollar bail package); United States v. Ciccone, 312 F.3d 535 (2d Cir. 2002) (rejecting $1 million bail secured by real property); United States v. Orena, 986 F.2d 628, 630-33 (2d Cir. 1993) (rejecting $3 million bail secured with real property, in-home detention, restricted visitation and telephone calls, and electronic monitoring); United States v. Colombo, 777 F.2d 96, 100 (2d Cir. 1985) (rejecting $500,000 bail secured with real property).  The Second Circuit has held that home detention and electronic monitoring are insufficient to protect the community against dangerous individuals:

> Home detention and electronic monitoring at best elaborately
> replicate a detention facility without the confidence of security such
> a facility instills.  If the government does not provide staff to monitor
> compliance extensively, protection of the community would be left

4

largely to the word of [the defendants] that [they] will obey the conditions.

United States v. Millan, 4 F.3d 1039, 1049 (2d Cir. 1993) (citations and internal quotations omitted).  See also United States v. Marra, 165 F. Supp. 2d 478, 486 (W.D.N.Y. 2001) (finding "that electronic monitoring will not reasonably assure defendant's presence as required.  At most, electronic monitoring would only reduce defendant's head start should she decide to flee").

Agnello, 101 F. Supp. 2d 108 at 114-115 (finding "his activities inside the house will not be observed, nor is it reasonable to believe that the defendant could not evade monitoring by obtaining access to communication devices and employing other methods to carry on criminal activity and to endeavor to obstruct justice.  A security guard posted outside, video cameras directed at the outside of the house, and monitoring of telephone lines cannot be relied upon without good faith compliance from the defendant") .

II.     **Defendants**

A.     **Joseph Corozzo**

1.     **Pending Charges**[2]

Corozzo is charged in ten Counts and nine Racketeering Acts of the Indictment.  Count One of the Indictment charges Corozzo — a longtime Gambino Family Soldier and Captain, and currently Consiglieri (the third-highest rank in the entire Family, among over 200 made members) — with racketeering conspiracy.  The objects of the charged racketeering conspiracy include murder (several of which Corozzo directly approved or ordered), narcotics trafficking, extortion, assault, arson, loansharking, operating illegal gambling businesses, mail and wire fraud, stolen property crimes, and other crimes.

Beyond the racketeering conspiracy charge, the Indictment charges Corozzo with substantive racketeering and the following substantive offenses:

- Cocaine trafficking (Racketeering Act Two, Count Seven);

- Marijuana trafficking (Racketeering Act Three, Count Eight);

- Two separate extortions (Racketeering Acts Ten and Eleven, and Count Sixteen);

- Arson (Racketeering Act Thirteen);

- Loansharking (Racketeering Act Fifteen, Counts Twenty-Two and Twenty-Three);

- Operating various gambling businesses (Racketeering Acts Five, Seven and Eight, and Counts Ten, Twelve and Thirteen).

---

[2]     The Government attaches to this memorandum two charts: (1) Exhibit A, which shows the charges sorted by defendant; and (2) Exhibit B, which shows the charges sorted by conduct.

### 2.     Penalties

Corozzo faces a mandatory minimum of ten years' imprisonment if convicted either on Count Seven (cocaine trafficking) or Count Eight (marijuana trafficking).  Because Corozzo is a Career Offender pursuant to U.S.S.G. § 4B1.1, he faces a Guidelines range in excess of 30 years if convicted on either the cocaine or marijuana charges, and 20 years' imprisonment if convicted on the ecstasy charge or <u>any</u> of the charged crimes of violence, including extortion and loansharking.[3]  Even if Corozzo is convicted solely of the racketeering conspiracy charge — meaning, even if Corozzo is convicted of agreeing to participate in the affairs of the Gambino Family and knowing of "the general criminal objective of a jointly undertaken scheme," <u>United States</u> v. <u>Yannotti</u>, 541 F.2d 112, 122 (2d Cir. 2008) — he faces a Guidelines range of 210 to 262 months' imprisonment under the Career Offender Guideline.

### 3.     Criminal Record

Corozzo has four prior convictions, including three prior convictions for crimes of violence.  In light of these convictions, and timing of the offenses charged here, Corozzo already has 12 criminal history points — which places him in Criminal History Category V — and is a Career Offender, as discussed above.

In 2008, Corozzo was convicted in the Eastern District of New York for racketeering conspiracy, including multiple underlying predicate acts of extortion, which resulted in a sentence of 46 months' imprisonment.  Corozzo is still serving this sentence, and is scheduled to be released from custody in June 2011.

---

[3]     Corozzo is a Career Offender because (1) he was over eighteen years old at the time of the charged offenses; (2) the instant offenses include felony crimes of violence; and (3) he has at least two (in fact, three) prior convictions for crimes of violence.  <u>See</u> U.S.S.G. § 4B1.1

In 1996, Corozzo was convicted in the Eastern District of New York for racketeering conspiracy, which resulted in a sentence of three years' imprisonment.

In 1979, Corozzo was convicted in the Eastern District of New York for conspiracy to commit tax fraud, which resulted in a sentence of one year and one day imprisonment.

In 1963, Corozzo was convicted in the Kings County Supreme Court for assault in the third degree.

### 4.      Presumption of Detention

The statutory presumption of detention applies to Corozzo because he is charged in Counts Seven and Eight with narcotics trafficking crimes carrying maximum sentences of life imprisonment.  See 18 U.S.C. § 3142(e)(3)(A).

### 5.      Discussion

Corozzo has been a member of the Gambino Family for most of his adult life. Over the past three decades, he has steadily risen through the ranks and now sits as the Consiglieri of the entire Gambino Family.  Corozzo has hundreds of members and associates who fall under his authority, each of whom is required to carry out orders from superiors.

Not only is Corozzo a leader of the mob, he is already a four-time convicted felon. Corozzo has previously been convicted of racketeering offenses (twice), as well as tax fraud and assault.

Corozzo now stands accused of massive narcotics trafficking, among other crimes.  For decades, Corozzo and the Gambino Family have controlled, overseen and profited from the distribution of thousands of kilograms of cocaine and marijuana, which has generated tens of millions of dollars in illegal proceeds.  Since at least the mid-1980s, Corozzo and other

8

powerful members of the Gambino Family have controlled the drug trade throughout broad swaths of Queens and elsewhere.  Specifically, Corozzo and his Gambino Family co-conspirators have controlled sources of supply and have forced wholesalers and street-level dealers to buy from those sources of supply, while taking a cut of the profits.  Corozzo and his cohorts also controlled numerous wholesalers and street-level dealers, in particular cocaine dealers.  In short, any major player in the Queens-based cocaine trade needs to be able to claim he is "with" or "around" a mobster, to protect his own turf and to protect himself from being pushed out of the drug trade, through violence or otherwise.  Under the resulting arrangements, Corozzo controlled dozens of drug dealers on the streets; those dealers received "protection" from Corozzo and the Gambino Family, and, in return, shared portions of their narcotics proceeds with Corozzo and his co-conspirators.  Over the years, Corozzo's operation has moved thousands of kilograms of cocaine, and thousands of kilograms of marijuana, which have generated tens of millions of dollars in illegal revenue for the Gambino Family.

Corozzo also stands accused of many other serious crimes and crimes of violence.  Corozzo is charged with participating in two extortions, including one that he has continued to commit while serving his current prison sentence.  He is also charged with numerous acts of arson, as well as traditional mob moneymakers like loansharking and gambling. In fact, Corozzo has long been one of the Gambino Family's most prodigious loansharks, and he has long controlled extensive gambling operations.

Corozzo has an exceptionally strong incentive to obstruct justice and to flee. He faces near-certain life imprisonment if convicted on nearly any of the charges against him.  The evidence against Corozzo is strong, and includes:  (1) testimony from at least three cooperating witnesses who, collectively, can testify about Corozzo's participation in the mafia and in criminal

activity stretching from the 1980s through the present; (2) consensual recordings in which Corozzo discusses mafia business, his dealings with other powerful mobsters, and certain of the charged crimes; (3) consensual recordings made by a cooperating witness ("CW-1") of numerous co-conspirators of Corozzo's — including several of his charged co-conspirators here — discussing Corozzo's mob activities and crimes as recently as 2009;[4] (4) Corozzo's prior guilty pleas, in which he has admitted participating in the Gambino Family's affairs and committing crimes of violence, including extortion, to further the interests of the Gambino Family; and (5) law enforcement testimony and surveillance photographs showing Corozzo associating with dozens of powerful mobsters over the past three decades.

Because of the strength of the evidence and the potential punishment he faces, Corozzo also has a strong incentive to flee.  In 2008, Corozzo's brother, Nicholas Corozzo (a Gambino Family Captain) was indicted in the Eastern District of New York.  Before he could be arrested, Nicholas Corozzo fled, and remained on the lam for approximately seven weeks before his attorney negotiated a surrender.  Corozzo was thereafter convicted of a double murder, and he remains in prison today.  The Government raises this point not to argue that Joseph Corozzo will necessarily flee simply because his brother did so in 2008, but rather to point out that a close relative of Corozzo's recently managed to flee for an extended time, and that the means by which

---

[4]     As discussed throughout this memorandum, CW-1 had for several decades been a close and trusted criminal associate of Corozzo, Alphonse Trucchio, and many other defendants named here.  CW-1 began cooperating with the Government in 2009, and thereafter wore a hidden recording device while continuing to operate within Trucchio's crew, and other closely related crews.  During his cooperation, CW-1 made over 140 consensual recordings of many of the defendants here.  In many of those conversations, the defendants here openly discussed their own crimes and the crimes of their fellow crew members and co-conspirators, as discussed throughout this memorandum.

Nicholas Corozzo did so remain unknown to the Government and presumably are available to Joseph Corozzo as well.

Corozzo is a danger to the community and a flight risk.  He is a four-time convicted felon, and a dedicated, longtime mobster who now faces life impirsonment.  The statutory presumption in favor of detention applies amply here and cannot be overcome. Corozzo should be detained.

11

**B.      Bartolomeo Vernace**

      **1.      Pending Charges**

Vernace is charged in six Counts and five Racketeering Acts of the

Indictment.  Count Two of the Indictment charges Vernace with substantive racketeering.

Vernace has been a made member of the Gambino Family since the 1990s.  He thereafter was

elevated to the rank of Captain, and, in recent years, has been elevated to the top of the Gambino

Family.  Since approximately 2008, Vernace has been one of three members of a Ruling Panel

governing all of the Gambino Family's activities.

      The Indictment charges Vernace with substantive racketeering and the following

substantive offenses:

- Loansharking (Racketeering Act Fifteen, Counts Twenty-Two and Twenty-Three); and

- Two counts of operating illegal gambling businesses (Racketeering Acts Five and Seven, and Counts Ten and Twelve).

      **2.      Penalties**

Vernace faces a Guidelines range of approximately five years imprisonment on

the loansharking charge and approximately two years on each of the gambling charges.

      **3.      Criminal Record**

Vernace has been convicted of two misdemeanors – one for promoting gambling

in 1980 and one for loitering in 1971.

      **4.      Presumption of Detention**

The statutory presumption of detention does not apply to Vernace.

      **5.      Discussion**

Vernace is currently one of the leaders of the entire Gambino Family. Specifically, Vernace is one of three experienced mobsters who sit on a Ruling Panel governing the criminal affairs of the entire Gambino Family.  Vernace therefore has literally hundreds of mobsters — each of whom has taken an oath to commit crimes to promote and protect the mob — under his authority and command.  As the Second Circuit has recognized, a person who holds a leadership position in organized crime poses unique risks to the community:  "[Defendant's] role in the Gambino crime family signaled that he had not separated himself from the criminal enterprise for which he carried out violence and obstruction and confirmed that he continued to be in a position to call on enterprise members to carry out violent activities, among other crimes, on his behalf."  United States v. Marino, 2010 WL 4009104 at *3.

The proof of Vernace's leadership position in the Gambino Family includes testimony from a cooperating witness; consensual tapes made by CW-1 of Vernace and others discussing the Gambino Family's affairs and Vernace's role in the Family, in 2009; and surveillance of Vernace at various mob social functions with other members and leaders of the Gambino Family.

Vernace's conduct here reflects the precise concern voiced by the Second Circuit. Vernace is a danger not because he commits crimes by his own hand, but rather because of his ability, and demonstrated willingness, to order others to do so.  Specifically here, Vernace is charged with racketeering, plus a violent crime (loansharking) as well as two gambling crimes. Vernace committed his crimes primarily by having others carry out his orders and instructions. In addition to these charged acts, the Government will prove at trial that Vernace ordered his Gambino Family underlings to commit beatings and other violent acts.

13

Because he is a leader of the Gambino Family, and because he is charged here with serious crimes including a crime of violence, Vernace should be detained.

### C.   Alphonse Trucchio

#### 1.   Pending Charges

Trucchio is charged in twelve Counts and seven Racketeering Acts of the Indictment.  Count One of the Indictment charges Trucchio with racketeering conspiracy. Trucchio has been committing crimes with and for the Gambino Family since he was a teenager, and throughout his entire adult life.  Trucchio was formally initiated as a Soldier in the early 2000s, when he was in his twenties — exceptionally early by typical mafia standards.  Thereafter, in the mid-2000s, Trucchio was promoted to the rank of Captain, in which capacity he currently presides over a particularly dangerous crew of Gambino Family Soldiers and associates, including many of his co-defendants here.

Beyond the racketeering conspiracy charge, the Indictment charges Trucchio with substantive racketeering and the following substantive offenses:

- Cocaine trafficking (Racketeering Act Two, Count Seven);

- Marijuana trafficking (Racketeering Act Three, Count Eight);

- Ecstasy trafficking (Racketeering Act Four, Count Nine);

- Two separate assaults in aid of racketeering (Counts Five and Six);

- Loansharking (Racketeering Act Fifteen, Counts Twenty-Two and Twenty-Three);

- Operating various gambling businesses (Racketeering Acts Four, Five, and Six, and Counts Ten, Eleven, and Twelve).

#### 2.   Penalties

Trucchio faces a mandatory minimum of ten years' imprisonment — and a Guidelines range in excess of 25 years' imprisonment — upon conviction on either Count Seven (cocaine trafficking) or Count Eight (marijuana trafficking).  Trucchio also faces a sentence in

15

excess of ten years on the ecstasy trafficking count, and in excess of five years on each of the numerous assault and loansharking charges.

### 3.  Criminal Record

In April 2003, Trucchio was convicted in the Queens County Supreme Court of Enterprise Corruption.  That conviction resulted in a sentence of 18 to 54 months' imprisonment.  Trucchio was in prison from approximately August 2003 until October 2004, at which time he was paroled.  Trucchio proceeded to commit the crimes charged in this case while he was on parole.

### 4.  Presumption of Detention

The statutory presumption of detention applies to Trucchio because he is charged in Counts Seven and Eight with narcotics trafficking crimes carrying maximum sentences of life imprisonment, and in Count Nine with a narcotics trafficking offense carrying a maximum sentence of twenty years' imprisonment.  See 18 U.S.C. § 3142(e)(3)(A).

### 5.  Discussion

Trucchio is something of a mafia prodigy.  Trucchio began committing serious crimes with and for the mafia when he was a teenager, thanks in part to the influence of his father, Ronald Trucchio — a Gambino Family Captain who is serving a life sentence resulting from a 2006 conviction in the Middle District of Florida.  Alphonse Trucchio has, however, made his way in the mob largely on his own merits and because of his own criminal proficiency.  Trucchio was initiated into the Gambino Family while he was in his twenties, and he rose to the rank of Captain in his early thirties.  Along the way, Trucchio managed to sustain a prior serious felony conviction and spend over a year in prison, without significant career interruption; after he was released on parole, he picked up his criminal career right where he had left off, and

committed the offenses charged here.

Trucchio, now 34 years old, is currently the youngest Captain in the Gambino Family.  He presides over a crew — including many of his co-defendants in this case — that is large, young, profitable, and violent.  Working along with Corozzo, Trucchio has directly participated in, overseen and profited from the distribution of thousands of kilograms of cocaine and marijuana, plus tens of thousands of ecstasy pills, which together have generated tens of millions of dollars in illegal proceeds for the Gambino Family.

Further, while Trucchio himself has a history of directly committing violence, the more serious threat now lies in Trucchio's ability to order and control his own pack of mobsters and drug dealers who fall under his command, including Michael Roccaforte, Anthony Moscatiello, Todd LaBarca, and many other co-defendants charged here.  Trucchio is charged here with authorizing others to commit several violent assaults in furtherance of Gambino Family business.  In fact, in one consensual tape made by CW-1 in 2009, crew member Todd LaBarca (who is discussed more fully below) indicates that Trucchio received credit within the mob for orchestrating the 2002 murder of Marty Bosshart.

Trucchio now faces serious charges coupled with straightforward proof of his guilt.  The Government will prove Trucchio's membership in the Gambino Family, and participation in massive narcotics trafficking, among other crimes, through the following means: (1) three cooperating witnesses who will testify about Trucchio's participation and rank in the Gambino Family, as well as Trucchio's direct involvement in narcotics trafficking and violent crimes; (2) numerous tapes made by CW-1 of Trucchio himself directly discussing his own crimes, including narcotics trafficking and crimes of violence, in 2009; (3) numerous tapes made by CW-1 of Trucchio's crew members and co-conspirators discussing Trucchio's crimes, in

2009; (4) Trucchio's own prior guilty plea to a charge of enterprise corruption; and (5)

surveillance photographs showing Trucchio with other members and leaders of the Gambino

Family over the past several years, including in 2009 and 2010.

     The statutory presumption of detention holds against Trucchio.  He is a serious

danger and a flight risk, owing to the evidence and penalties he now faces.  Trucchio should be

detained.

### D. Louis Mastrangelo

#### 1. Pending Charges

Mastrangelo is charged in eleven Counts and eight Racketeering Acts of the Indictment. Count One of the Indictment charges Mastrangelo with racketeering conspiracy; Mastrangelo is currently a Captain in the Gambino Family, in charge of his own crew of other members and associates. Beyond the racketeering conspiracy charge, the Indictment charges Mastrangelo with substantive racketeering and the following substantive offenses:

- Cocaine trafficking (Racketeering Act Two, Count Seven);

- Marijuana trafficking (Racketeering Act Three, Count Eight);

- Ecstasy trafficking (Racketeering Act Four, Count Nine);

- Extortion (Racketeering Act Ten, Count Sixteen);

- Loansharking (Racketeering Act Fifteen, Counts Twenty-Two and Twenty-Three);

- Operating various gambling businesses (Racketeering Acts Five, Seven and Eight, and Counts Ten, Twelve, and Thirteen).

#### 2. Penalties

Mastrangelo faces a mandatory minimum of ten years' imprisonment — and a Guidelines range in excess of 25 years' imprisonment — upon conviction on either Count Seven (cocaine trafficking) or Count Eight (marijuana trafficking). Mastrangelo also faces more than five years on each of the numerous assault and loansharking charges.

#### 3. Criminal Record

Mastrangelo has three prior felony convictions.

On or about January 20, 1995, Mastrangelo was convicted in the New York County Supreme Court of enterprise corruption, which resulted in a sentence of 30 to 90 months'

imprisonment.

On or about February 15, 1980, Mastrangelo was convicted in the Nassau County Court of criminal usury in the second degree, which resulted in a sentence of five years' probation.

On or about May 3, 1974, Mastrangelo was convicted in the Nassau County Court of possession of a dangerous weapon, which resulted in a sentence of three years' probation.

### 4.      Presumption of Detention

The statutory presumption of detention applies to Mastrangelo because he is charged in Counts Seven and Eight with narcotics trafficking crimes carrying maximum sentences of life imprisonment.  See 18 U.S.C. § 3142(e)(3)(A)

### 5.      Discussion

Mastrangelo, like many of the other defendants here, has chosen to make crime his career.  Mastrangelo has been a mobster for decades.  As a reward for his life of crime, he has been promoted to the rank of Captain, in which capacity he oversees a crew of violent mob members and associates.  Mastragelo's crew includes co-defendants Todd LaBarca and Vincenzo Frogiero, among others.

 Mastrangelo — already a three-time convicted felon — now stands accused of a serious array of crimes, including large-scale trafficking of cocaine, marijuana, and ecstasy; Mastrangelo participated in the same narcotics operations overseen by Corozzo and Trucchio, which are discussed above.  He is also charged with violent crimes, including extortion and loansharking.

Mastrangelo faces serious penalties upon conviction, including a mandatory minimum sentence of ten years upon conviction on either the cocaine or marijuana charges.  And

he faces a daunting array of proof against him, including: (1) testimony from three cooperating witnesses about his mob membership and specific underlying crimes; (2) numerous tapes made by CW-1 of Mastrangelo himself discussing mob business and the charged crimes in 2009; (3) numerous tapes made by CW-1 of Mastrangelo's crew members and co-conspirators discussing Mastrangelo's role in the Gambino Family and participation in the charged crimes in 2009; (4) Mastrangelo's own prior guilty pleas, including his 1995 plea to enterprise corruption; and (5) surveillance photographs of Mastrangelo with other mobsters, including other mob leaders, from the 1990s through 2009.

Given Mastrangelo's leadership role in the mob, the serious charges and penalties he faces here, the strength of the evidence against him, and the fact that he is already a three-time felon, the statutory presumption in favor of detention easily holds.  Mastrangelo should be detained.

E.      **Michael Roccaforte**

    1.      **Pending Charges**

Roccaforte is charged in nine Counts and six Racketeering Acts of the Indictment.  Count One of the Indictment charges Roccaforte with racketeering conspiracy; specifically, the Indictment charges that Roccaforte was an initiated, made member – sometimes called a Soldier – of the Gambino Family.  Roccaforte was a member of Trucchio's mob crew, and one of Trucchio's most active and trusted followers.

Beyond the racketeering conspiracy charge, the Indictment charges Roccaforte with substantive racketeering and the following substantive offenses:

- Cocaine trafficking (Racketeering Act Two, Count Seven);

- Marijuana trafficking (Racketeering Act Three, Count Eight);

- Ecstasy trafficking (Racketeering Act Four, Count Nine);

- Loansharking (Racketeering Act Fifteen, Counts Twenty-Two and Twenty-Three);

- Operating various gambling businesses (Racketeering Acts Five and Seven, and Counts Ten and Twelve).

    2.      **Penalties**

Roccaforte faces a mandatory minimum of ten years' imprisonment — and a Guidelines range in excess of 25 years' imprisonment — upon conviction on either Count Seven (cocaine trafficking) or Count Eight (marijuana trafficking).  Roccaforte also faces a sentence in excess of five years on the ecstasy counts and on the loansharking counts.

    3.      **Criminal Record**

22

Roccaforte has no prior convictions.[5]

### 4.      Presumption of Detention

The statutory presumption of detention applies to Roccaforte because he is charged in Counts Seven and Eight with narcotics trafficking crimes carrying maximum sentences of life imprisonment, and in Count Nine with a narcotics trafficking offense carrying a maximum sentence of twenty years' imprisonment.  See 18 U.S.C. § 3142(e)(3)(A).

### 5.      Discussion

Roccaforte is a made member, or Soldier, of the Gambino Family.  Like many of his co-defendants, he has chosen crime as a career.  And Roccaforte has done quite well in that profession.  Working directly under his Captain (Trucchio), Roccaforte has overseen, run and profited from a massive narcotics trafficking enterprise.  He has moved hundreds of kilograms of cocaine and marijuana, plus tens of thousands of ecstasy pills.  Now, as a result, he faces a mandatory minimum term of ten years' imprisonment upon conviction for either the cocaine or marijuana conspiracies.  On top of those drug charges, Roccaforte is also charged with crimes of violence (loansharking) and with running and profiting from illegal gambling enterprises.

Moreover, there is evidence that Roccaforte was a participant in the 2002 plot to murder Marty Bosshart, which is charged in the Indictment here against co-defendant Todd LaBarca (discussed below).  Specifically, in a recording made by CW-1 on November 3, 2009, LaBarca described the murder in detail to CW-1.  In the process of incriminating himself,

---

[5]      The fact that Roccaforte has avoided any prior convictions is apparently a source of amazement even for his closest mafia confederates and co-conspirators.   In one recording made by CW-1, various co-defendants talk about how, if Roccaforte is not arrested at some point for all he's done, then he must be a cooperating witness, because there is no other way to explain the fact that he has not been arrested previously.

LaBarca — obviously unaware he was being recorded — stated that the murder was sanctioned at least in part because Bosshart (the victim) had tried to cut Roccaforte out of a lucrative drug operation.  LaBarca also stated on the tape that Roccaforte was involved in planning the murder for several weeks before it happened, though Roccaforte failed to do as what he was supposed to do on the night of the murder.  As discussed below, LaBarca and others in fact killed Bosshart as a result of this plotting.

The evidence of Roccaforte's guilt is strong and straightforward.  It includes: (1) testimony from three cooperating witnesses about Roccaforte's mob status and commission of the charged crimes; (2) tapes made by CW-1 of Roccaforte himself discussing and committing certain crimes, including loansharking and gambling, in 2009; (3) tapes made by CW-1 of co-conspirators discussing Roccaforte's mob status and commission of crimes, including the tape of LaBarca discussing Roccaforte's participation in the Bosshart murder, and other tapes in which co-conspirators discuss Roccaforte's oversight of drug trafficking operations, in 2009; and (4) surveillance of Roccaforte at mob social events with Corozzo, Vernace, Trucchio and many other Gambino Family leaders, members and associates.

The statutory presumption applies to Roccaforte here, and cannot be overcome. Roccaforte should be detained.

F.      **Anthony Moscatiello**

1.      **Pending Charges**

Moscatiello is charged in seven Counts and five Racketeering Acts of the

Indictment.  Count One of the Indictment charges Moscatiello with racketeering conspiracy;

specifically, the Indictment charges that Moscatiello was a Gambino Family Soldier in

Trucchio's crew.  As a made member of the Family, Moscatiello — like Roccaforte — worked

closely with Trucchio and was entrusted with hands-on supervision of much of the crew's

criminal activity.

Beyond the racketeering conspiracy charge, the Indictment charges Moscatiello

with substantive racketeering and the following substantive offenses:

- Marijuana trafficking (Racketeering Act Three, Count Eight);

- Arson (Racketeering Act Thirteen);

- Loansharking (Racketeering Act Fifteen, Counts Twenty-Two and Twenty-Three); and

- Operating various gambling businesses (Racketeering Acts Five, Six and Seven, and Counts Ten, Eleven and Twelve).

2.      **Penalties**

Moscatiello faces a mandatory minimum of ten years' imprisonment based on the

marijuana trafficking charge in Count Eight.  He also faces between four and six years'

imprisonment on each of the arson and loansharking charges.

3.      **Criminal Record**

Moscatiello has two prior convictions, including one felony.

Moscatiello was convicted in the Queens County Supreme Court in April 2003 of

enterprise corruption, which resulted in a sentence of one to three years' imprisonment.

25

Moscatiello was convicted in the Kings County Criminal Court in March 2005 of driving while impaired, which resulted in a sentence of conditional discharge.

### 4.     Presumption of Detention

The statutory presumption of detention applies to Moscatiello because he is charged in Count Eight with a narcotics trafficking crime carrying maximum sentences of life imprisonment.  See 18 U.S.C. § 3142(e)(3)(A).

### 5.     Discussion

Moscatiello is a made member of the Gambino Family, and one of Trucchio's closest and most trusted crew members.  Moscatiello, along with Michael Roccaforte (discussed above) were the primary, hands-on overseers of much of the crew's criminal activity.  In his capacity as a Gambino Family Soldier, Moscatiello has the authority to direct the criminal activity of many associates, including several of his co-conspirators here.

Moscatiello already has two prior convictions, including a felony enterprise corruption conviction in 2003 (his co-defendants in that case included Trucchio, Frank Roccaforte, and Anthino Russo, all of whom are defendants here as well).  Moscatiello now stands charged with participating in a massive marijuana distribution operation, as well as violent crimes including racketeering, arson, loansharking, and operating numerous gambling businesses.  Tellingly — and characteristically for any made member of the mafia — Moscatiello resumed committing crimes, including the crimes charged here, while he was on probation following his release from prison on his 2003 conviction.  Moscatiello has therefore exhibited little amenability to court supervision.

Moreover, the evidence of Moscatiello's guilt here is strong.  It includes tapes made by CW-1 of Moscatiello himself and other co-conspirators discussing Moscatiello's mob

activities and crimes in 2009, Mascatiello's prior guilty plea and admission to committing

enterprise crimes with Trucchio and others, and surveillance of Moscatiello at various Gambino

Family social functions.

The statutory presumption of detention cannot be overcome here.  Because he is a

danger and a flight risk, Moscatiello should be detained.

G.      **Vincenzo Frogiero**

1.      **Pending Charges**

Frogiero is charged with racketeering conspiracy, substantive racketeering, loansharking, and gambling. The Indictment charges that Frogiero is a made member, or Soldier, in the Gambino Family, specifically in the crew of Louis Mastrangelo, who is discussed above.

2.      **Penalties**

Frogiero faces a likely sentence of four to six years' imprisonment upon conviction here. Perhaps more importantly, however, Frogiero is not a United States citizen, but rather a legal permanent resident. Thus, Frogiero faces near-certain deportation upon conviction of any offense charged here.

3.      **Criminal Record**

Frogiero was convicted in 1997 in the Queens County Supreme Court of attempted bribery of a public servant, a felony, and was sentenced to five years' probation. Frogiero committed several of the crimes charged here while on probation.

4.      **Presumption of Detention**

The statutory presumption does not apply to Frogiero.

5.      **Discussion**

Frogiero is in a different situation than most of his co-defendants. Unlike most of his co-defendants, Frogiero is not charged with murder, narcotics trafficking, or firearms offenses; he therefore does not face a mandatory minimum prison sentence. The Indictment does, however, charge Frogiero with being a made member of the Gambino Family, and with committing a crime of violence (loansharking). The evidence against Frogiero, like that against his co-conspirators, is plain and strong, and includes testimony from cooperating witnesses, tapes

made by CW-1 of Frogiero himself discussing his crimes in 2009 (including one tape in which Frogiero brags about the ceremony in which he was inducted into the Gambino Family), tapes made by CW-1 of co-conspirator statements about Frogiero's crimes in 2009, and surveillance of Frogiero with other mobsters.

While Frogiero does not face the same potential jail time as many of his co-conspirators, he faces perhaps an even more daunting prospect: deportation.  As discussed above, Frogiero is a non-citizen, legal permanent resident.  Thus, upon conviction for any charge in this case, Frogiero likely will be deported and prohibited from re-entering the United States.

Even under normal circumstances, Frogiero is a danger to the community: he is a made member of the mob, he is a convicted felon, and he is charged here with a crime of violence.  On top of that, Frogiero faces the near-certainty of deportation here.  Frogiero poses a danger to the community, and has an incentive to obstruct justice or to flee.  Frogiero therefore should be detained.

### H.    Todd LaBarca

#### 1.    Pending Charges

LaBarca is charged in thirteen Counts and eight Racketeering Acts of the Indictment.  LaBarca, who is charged in Count One of the Indictment with racketeering conspiracy, has been an active Gambino Family associate for more than a decade.  He has long been, and remains today, an enforcer and a major drug trafficker under Corozzo, Trucchio, and Mastrangelo.  LaBarca has long hoped that he will be rewarded for his criminality with induction into the Gambino Family, and has been promised that that reward will be coming to him in the near future.

Beyond the racketeering conspiracy charge, the Indictment charges LaBarca with substantive racketeering and the following substantive offenses:

- Murder of Marty Bosshart (Racketeering Act One, Counts Three and Four);

- Marijuana trafficking (Racketeering Act Three, Count Eight);

- Ecstasy trafficking (Racketeering Act Four, Count Nine);

- Extortion (Racketeering Act Twelve, Count Seventeen);

- Possession and Use of Firearm Relating to a Crime of Violence (Count Eighteen);

- Loansharking (Racketeering Act Fifteen, Counts Twenty-Two and Twenty-Three);

- Operating various gambling businesses (Racketeering Acts Five, Seven and Eight, and Counts Ten, Twelve, and Thirteen).

### 2.      Penalties

LaBarca faces a sentence of death or life imprisonment upon conviction for the charged 2002 murder of Marty Bosshart.[6]

LaBarca faces a mandatory minimum of twenty years' imprisonment upon conviction on Count Eight (marijuana trafficking), because he already has one prior felony conviction for narcotics distribution.  See 21 U.S.C. § 841(b)(1)(A).  LaBarca also faces a mandatory consecutive minimum sentence of seven years' imprisonment upon conviction on Count Eighteen, the violation of 18 U.S.C. § 924(c).  See 21 U.S.C. § 841(b)(1)(B).

### 3.      Criminal Record

LaBarca has four prior convictions, and is a Career Offender under the Guidelines.

In October 2003, LaBarca was convicted in the Queens County Supreme Court of attempted coercion by causing fear to injure a person or damage property, a felony.  That conviction resulted in a sentence of 18 months' to three years' imprisonment.

In July 1998, LaBarca was convicted in the Queens County Supreme Court of (1) criminal sale of a controlled substance in the fifth degree, a felony, and (2) promoting gambling in the first degree, a felony.  Those convictions resulted in a sentence of five years' probation.

In March 1997, LaBarca was convicted of promoting gambling in the second degree, a misdemeanor, and was sentenced to conditional discharge.

### 4.      Presumption of Detention

The statutory presumption of detention applies to LaBarca because he is charged in Count Eight with a narcotics trafficking crime carrying a maximum sentence of life

---

[6]      The Department of Justice has already begun the death penalty review process for LaBarca.

imprisonment, and because he is charged in Count Eighteen with a violation of 18 U.S.C. § 924(c).  See 18 U.S.C. §§ 3142(e)(3)(A) and (B).

###### 5.      Discussion

LaBarca poses a flight risk and a serious danger to the community.  Most importantly, LaBarca faces a sentence of death or mandatory life imprisonment upon conviction for the charged murder of Marty Bosshart, coupled with devastating proof — LaBarca's very own statements, captured by CW-1 on tape, in which LaBarca describes at length and in detail his own participation in the murder.

In the early 2000's, Bosshart was involved in narcotics trafficking and other crimes with various members of Trucchio's crew, including LaBarca.  In approximately 2001, Bosshart proposed to LaBarca and other crew members that they cut Michael Roccaforte — a defendant in the case here, who was higher-ranking than Bosshart within the Gambino Family — out of the crew's lucrative, ongoing marijuana trafficking business.  As a result, LaBarca and others planned to murder Bosshart.  On January 2, 2002, LaBarca and others lured Bosshart into a car and shot him execution-style in the back of the head, leaving his body on the side of a road in Queens.  Bosshart was 30 years old.

In a consensual recording made on November 3, 2009, LaBarca discussed and described his own role in the murder of Bosshart.  On that recording, LaBarca stated, among other things:  that the murder was planned  for several weeks beforehand; that Trucchio had received credit within the Gambino Family for orchestrating the murder; that the murder was sanctioned by the Gambino Family because Bosshart had tried to cut Michael Roccaforte out of a lucrative narcotics business; that LaBarca was supposed to be the shooter, but instead was present inside a car when another individual, Gennaro Bruno, shot the victim in the head; that

LaBarca worked with several others, including Roccaforte and Bruno, to plan and execute the murder; and that LaBarca became Trucchio's "go-to guy" as a result of the murder.

This evidence shows that LaBarca is not merely a remorseless killer, but a proud one. Somewhat disturbingly, LaBarca proudly confirms on the tape that, as a result of his participation in the murder of Bosshart, he has become Trucchio's "go-to guy" and is now recognized within the crew as being a "capable guy" — which, in mob parlance, means "capable" of killing. LaBarca now faces death or mandatory life imprisonment based on his own recorded statements. The strength of the evidence, coupled with the prospect of a sentence of death or life imprisonment, provide LaBarca with a powerful incentive to obstruct justice and to flee.

Even beyond the murder charge, LaBarca faces serious charges, massive penalties, and straightforward proof of guilt. For example, LaBarca faces a mandatory minimum of twenty years' imprisonment on the charged marijuana distribution offense (the mandatory minimum is twenty years, not ten, because LaBarca has a prior narcotics distribution conviction). The evidence on that charge includes cooperator testimony and several statements by LaBarca himself, on tape, in 2009, about his marijuana trafficking. For example, in two separate tapes, LaBarca talked to CW-1 specifically about how he imports hundreds of pounds of marijuana per week from California and then sells the marijuana to other drug suppliers.

Nor does LaBarca come before this Court with a clean record. Despite being only 39 years old, LaBarca has already managed to sustain four prior convictions — three of them felonies — including prior convictions for a crime of violence and a drug trafficking crime.

LaBarca is an extraordinarily dangerous individual, with every incentive to obstruct justice and to flee. The statutory presumption of detention cannot be overcome here,

and LaBarca should be detained.

I.      **Christopher Reynolds**

1.      **Pending Charges**

Reynolds is charged in five Counts and two Racketeering Acts of the
Indictment.  Count One of the Indictment charges Reynolds with racketeering conspiracy;
specifically, the Indictment charges that Reynolds was a Gambino Family associate under
Corozzo and Trucchio.

Beyond the racketeering conspiracy charge, the Indictment charges Reynolds with
substantive racketeering and the following substantive offenses:

- Marijuana trafficking (Racketeering Act Three, Count Eight);

- Assault in aid of racketeering (Count Six); and

- Operating a gambling businesses (Racketeering Act Five and Count Ten).

2.      **Penalties**

Reynolds faces a mandatory minimum of ten years' imprisonment upon
conviction on Count Eight (marijuana trafficking).  Reynolds also faces a sentence in excess of
four years on the assault charge.

3.      **Criminal Record**

Reynolds has four prior convictions.

In August 2009, Reynolds was convicted in the New York County Criminal
Court of criminal possession of a controlled substance in the seventh degree, which resulted in a
sentence of time served.

In March 2008, Reynolds was convicted in the Queens County Criminal Court of
criminal possession of a controlled substance in the seventh degree, which resulted in a sentence
of conditional discharge.

35

In April 2003, Reynolds was convicted in the Queens County Supreme Court of criminal facilitation in the fourth degree, which resulted in a sentence of conditional discharge.

In December 2001, Reynolds was convicted in the Queens County Supreme Court of assault in the third degree, which resulted in a sentence of conditional discharge.

### 4.    Presumption of Detention

The statutory presumption of detention applies to Reynolds because he is charged in Count Eight with a narcotics trafficking crime carrying a maximum sentence of life imprisonment.  See 18 U.S.C. § 3142(e)(3)(A).

### 5.    Discussion

All the relevant factors here weigh in favor of detention.  Reynolds is a Gambino Family associate who now stands charged with helping the mafia to run a multi-thousand kilogram marijuana distribution network.  Reynolds is also charged here with a violent crime, assault in aid of racketeering.  Reynolds faces a mandatory minimum sentence of ten years' imprisonment, and straightforward proof of his guilt, including his own taped statements.  For example, on one tape, Reynolds talked openly to CW-1 in 2009 about his "connect"; stated that he was selling over 50 pounds of "hydro" per week; and stated he was making $20,000 per week through marijuana trafficking.

Beyond that, Reynolds already has four prior convictions, including multiple drug crimes and a crime of violence.  And the statutory presumption in favor of detention applies. Reynolds is a danger and a flight risk, and should be detained here.

### J.      Salvatore Tortorici

#### 1.      Pending Charges

Tortorici is charged in six Counts and three Racketeering Acts of the

Indictment.  Count One of the Indictment charges Tortorici with racketeering conspiracy based

on his longstanding participation as a Gambino Family associate under Corozzo and Trucchio.

Beyond the racketeering conspiracy charge, the Indictment charges Tortorici with substantive

racketeering and the following substantive offenses:

- Cocaine trafficking (Racketeering Act Two, Count Seven);

- Loansharking (Racketeering Act Fifteen, Counts Twenty-Two and Twenty-Three);

- Operating a gambling business (Racketeering Act Five, and Count Ten).

#### 2.      Penalties

Tortorici faces a mandatory minimum of ten years' imprisonment — and a

Guidelines range in excess of 25 years' imprisonment — upon conviction on Count Seven

(cocaine trafficking).  Tortorici also faces a sentence of approximately four years on the

loansharking counts.

#### 3.      Criminal Record

In December 2009, Tortorici was convicted in the Queens County Criminal Court

of disorderly conduct (soliciting a prostitute), which resulted in a sentence of conditional

discharge.

In July 2006, Tortorici was convicted in the Queens County Criminal Court of

criminal possession of a controlled substance in the seventh degree, which resulted in a sentence

of conditional discharge.

### 4.     Presumption of Detention

The statutory presumption of detention applies to Tortorici because he is charged in Counts Seven with a narcotics trafficking crime carrying a maximum sentence of life imprisonment.  See 18 U.S.C. § 3142(e)(3)(A).

### 5.     Discussion

Tortorici should be detained as a danger and a flight risk.  Tortorici is a major cocaine dealer for the mob.  For years he has bought and sold multiple-kilogram quantities of cocaine while operating under the authority of, and paying up to, the Gambino Family.

The proof of Tortorici's guilt on the charged cocaine trafficking offense is plain and compelling.  Among other things, in one taped conversation in 2009, Tortorici spoke to CW-1 in detail about his cocaine supplier, and further stated that part of his profits from the drug trade went up to Trucchio.  That tape alone establishes Tortorici's guilt on the cocaine charges, and will subject him to a mandatory minimum of ten years' imprisonment.  The evidence also includes cooperating witness testimony and Tortorici's prior conviction for a narcotics offense.

Tortorici already has two prior convictions.  He now faces a statutory presumption of detention, a mandatory minimum of ten years' imprisonment, and recorded proof of his guilt. Tortorici should be detained.

### K.     Anthino Russo

#### 1.     Pending Charges

Russo is charged in five Counts and three Racketeering Acts of the Indictment.  Count One of the Indictment charges Russo with racketeering conspiracy; Russo is a Gambino Family associate directly under Trucchio.  Beyond the racketeering conspiracy charge, the Indictment charges Russo with substantive racketeering and the following substantive offenses:

- Cocaine trafficking (Racketeering Act Two, Count Seven);

- Marijuana trafficking (Racketeering Act Three, Count Eight);

- Operating a gambling business (Racketeering Act Five, and Count Ten).

#### 2.     Penalties

Russo faces a mandatory minimum of 20 years' imprisonment upon conviction on either Count Seven (cocaine trafficking) or Count Eight (marijuana trafficking) because, as discussed below, he has a prior felony narcotics conviction.  Russo faces an even higher Guidelines range, in excess of 30 years, because he is a Career Offender pursuant to U.S.S.G. § 4B1.1.

#### 3.     Criminal Record

Russo has two prior felony convictions, and, at the relatively young age of 33, has already managed to qualify as a Career Offender under the Guidelines.

In November 2005, Russo was convicted in the Queens County Supreme Court of criminal possession of a controlled substance with intent to sell in the fifth degree, which resulted in a sentence of two years' imprisonment.  Russo was released on parole in 2007, whereupon he promptly resumed committing drug crimes, including the crimes charged against him here.

In April 2003, Russo was convicted in the Queens County Supreme Court of enterprise corruption, which resulted in a sentence of five years' probation. Russo committed the crime for which he was convicted in November 2005, as well as the crimes charged here, while he was on probation.

### 4.    Presumption of Detention

The statutory presumption of detention applies to Russo because he is charged in Counts Seven and Eight with narcotics trafficking crimes carrying maximum sentences of life imprisonment. See 18 U.S.C. § 3142(e)(3)(A).

### 5.    Discussion

Russo is a danger and a flight risk, and must be detained. Russo comes before this Court having already sustained two prior felony convictions – one for enterprise corruption in 2003, and one for narcotics trafficking in 2005. Notably, Russo committed the 2005 drug trafficking crime while he was on probation as a result of his 2003 conviction. True to form, Russo committed even more crimes — the crimes charged here — while on parole after his imprisonment on the 2005 conviction. Russo has repeatedly shown zero amenability to court supervision. Nor has he shown the slightest inclination towards deterrence or rehabilitation.

As a result of his extensive rap sheet, Russo now faces a mandatory minimum sentence of twenty years' imprisonment upon conviction on either Counts Seven or Eight (cocaine and marijuana trafficking, respectively). As his record suggests, and as the evidence here shows, Russo is a serious drug dealer. That evidence includes: (1) testimony from at least two cooperating witnesses about Russo's drug dealing; (2) Russo's two prior guilty pleas, in which he admitted being a drug dealer (in 2005) and a member of a criminal enterprise (in 2003); and (3) surveillance of Russo attending various mob functions with his co-defendants and co-

conspirators in the case here, throughout 2008, 2009 and 2010.

Because he is a Career Offender, because he faces serious penalties here, and because he has previously committed crimes while on probation and parole, Russo must be detained here, consistent with the statutory presumption.

### L.    John Brancaccio

#### 1.    Pending Charges

Brancaccio is charged in seven Counts and four Racketeering Acts of the Indictment.  Count One of the Indictment charges Brancaccio with racketeering conspiracy based on his participation in narcotics and other crimes with and for the Gambino Family.  Brancaccio has, since as far back as the 1980s, been a major cocaine trafficker operating under the authority of Corozzo, Trucchio and others.

Beyond the racketeering conspiracy charge, the Indictment charges Brancaccio with substantive racketeering and the following substantive offenses:

- Cocaine trafficking (Racketeering Act Two, Count Seven);

- Marijuana trafficking (Racketeering Act Three, Count Eight);

- Extortion (Racketeering Act Twelve, Count Seventeen);

- Possession of a firearm in connection with a crime of violence (Count Eighteen); and

- Operating a gambling business (Racketeering Act Five, and Count Ten).

#### 2.    Penalties

Brancaccio faces a mandatory minimum of 20 years' imprisonment upon conviction on either Count Seven (cocaine trafficking) or Count Eight (marijuana trafficking) because, as discussed below, he has a prior felony narcotics conviction.  Brancaccio faces an even higher Guidelines range, in excess of 30 years, because he is a Career Offender pursuant to U.S.S.G. § 4B1.1.  On top of all that, Brancaccio faces a mandatory consecutive sentence of seven years' imprisonment based on the charged violation of 18 U.S.C. § 924(c).

#### 3.    Criminal Record

Brancaccio has sustained eight prior convictions, including two felonies – one felony crime of violence (in 1994) and one felony narcotics trafficking crime (in 2005).  As noted above, Brancaccio is a Career Offender under the Guidelines.

In May 2010, Brancaccio was convicted in the Queens County Criminal Court of disorderly conduct, which resulted in a sentence of conditional discharge.

In September 2005, Brancaccio was convicted in the Queens County Supreme Court of criminal sale of a controlled substance in the fifth degree, a felony, which resulted in a sentence of two to four years' imprisonment.  Brancaccio was in prison from approximately March 2006 until June 2007.

In September 2002, Brancaccio was convicted in the Queens County Criminal Court of criminal possession of marijuana in the fourth degree (more than two ounces), which resulted in a sentence of nine months' imprisonment.

In June 1994, Brancaccio was convicted in the Queens County Supreme Court of assault with intent to cause serious injury with a weapon, a felony, which resulted in a sentence of two to six years' imprisonment.  Brancaccio was in prison from approximately 1994 through 1998; after his release, Brancaccio was remanded for approximately four months in 2000 because he violated parole by committing assault in the first degree.

In August 1991, Brancaccio was convicted in the Queens County Criminal Court of general violation of vehicle and traffic law, which resulted in a sentence of a conditional discharge.

In April 1990, Brancaccio was convicted in the Queens County Criminal Court of disorderly conduct: fight / violent behavior, which resulted in a sentence of a conditional discharge.

43

In December 1988, Brancaccio was convicted in the Queens County Criminal Court of attempted criminal sale of marijuana in the fourth degree, which resulted in a sentence of a fine.

In July 1988, Brancaccio was convicted in the Queens County Criminal Court of criminal sale of marijuana in the fourth degree, which resulted in a sentence of a fine.

### 4.    Presumption of Detention

The statutory presumption of detention applies to Brancaccio because he is charged in Counts Seven and Eight with narcotics trafficking crimes carrying maximum sentences of life imprisonment, <u>see</u> 18 U.S.C. § 3142(e)(3)(A), and because he is charged with a violation of 18 U.S.C. § 924(c), <u>see</u> 18 U.S.C. § 3142(e)(3)(B).

### 5.    Discussion

Brancaccio's criminal record speaks for itself: Over the past 22 years, he has sustained eight separate convictions.  His crimes run the gamut from violence to narcotics trafficking to weapons.  Not surprisingly, Brancaccio is now a Career Offender.

Brancaccio now faces a mandatory minimum of 20 years' imprisonment on the cocaine and marijuana charges, and the proof of his guilt on those charges is straightforward. Multiple cooperating witnesses will testify about Brancaccio's history as a Gambino Family cocaine dealer under Corozzo and Trucchio.  Those witnesses will testify that Brancaccio has trafficked hundreds of kilograms of cocaine.  Further, Brancaccio himself was captured on tape by CW-1 in 2009 discussing his cocaine operation.  On one tape, Brancaccio stated that he had cocaine in the car and that other crew members knew about his drug dealing.  In other tapes made by CW-1, Brancaccio's co-conspirators — including LaBarca and Tortorici, who are discussed above — talked about Brancaccio's participation in cocaine trafficking.

Brancaccio's criminality extends beyond narcotics distribution.  He has previously been convicted of multiple crimes of violence.  He is charged here with committing a violent extortion and with possessing and using a firearm in the course of that extortion.  In one 2009 tape, Brancaccio described the charged extortion to CW-1, and Brancaccio stated that he put a gun to the head of the victim to collect money.  Brancaccio faces an additional mandatory consecutive sentence of seven years upon conviction for this charged firearms violation, and his guilt is as plain as his own recorded statements.

Brancaccio is a serious danger and a flight risk.  The statutory presumption applies here and cannot be overcome.  Brancaccio should be detained.

**M.**    **Keith Croce**

**1.**    **Pending Charges**

Croce is charged in four Counts and two Racketeering Acts of the

Indictment.  Count One of the Indictment charges Croce with racketeering conspiracy based

on his participation in narcotics and other crimes with and for the Gambino Family.  Croce has,

for more than a decade, been a cocaine trafficker operating under the authority of Corozzo,

Trucchio and others.

Beyond the racketeering conspiracy charge, the Indictment charges Croce with

substantive racketeering and the following substantive offenses:

- Cocaine trafficking (Racketeering Act Two, Count Seven);

- Operating a gambling business (Racketeering Act Five, and Count Ten).

**2.**    **Penalties**

Croce faces a mandatory minimum of 20 years' imprisonment upon conviction on

Count Seven (cocaine trafficking) because, as discussed below, he has a prior felony narcotics

conviction.  Croce faces a Guidelines range in excess of 30 years, because he is a Career

Offender pursuant to U.S.S.G. § 4B1.1.

**3.**    **Criminal Record**

Croce has two prior narcotics convictions, including one felony.

On November 18, 1991, Croce was convicted in the Queens County Supreme

Court of attempted criminal sale of a controlled substance in the third degree, a felony, which

resulted in a sentence of five years' probation.

On November 6, 1991, Croce was convicted in the Kings County Supreme Court

of criminal possession of narcotics in the fourth degree, which resulted in a sentence of five

years' probation.

### 4.      Presumption of Detention

The statutory presumption of detention applies to Croce because he is charged in Count Seven with a narcotics trafficking crime carrying a maximum sentence of life imprisonment, see 18 U.S.C. § 3142(e)(3)(A).

### 5.      Discussion

Croce has, since at least the early 1990s, been a major cocaine dealer for the Gambino Family, operating under (and generating profits for) Corozzo, Trucchio, and various of their crew members.  Croce is now a Career Offender, and he faces a mandatory minimum of twenty years' imprisonment on the charges here.  The evidence of Croce's guilt includes testimony from at three cooperating witnesses about his longtime cocaine dealing; tapes made by CW-1 in 2009 in which Croce's co-conspirators discuss Croce's drug trafficking; and Croce's two prior guilty pleas to narcotics charges.

The statutory presumption of detention applies to Croce, and he cannot overcome it.  Croce should be detained.

**III.     Conclusion**

           For all of the foregoing reasons the following defendants should be detained pending trial:  (1) Joseph Corozzo; (2) Bartolomeo Vernace, (3) Alphonse Trucchio; (4) Louis Mastrangelo; (5) Michael Roccaforte; (6) Anthony Moscatiello; (7) Vincenzo Frogiero; (8) Todd LaBarca; (9) Christopher Reynolds; (10) Salvatore Tortorici; (11) Anthino Russo; (12) John Brancaccio, and (13) Keith Croce.

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney
                              Southern District of New York

                By:          _____/s/_____
                              Elie Honig
                              John Zach
                              Peter Skinner
                              Assistant United States Attorneys
                              (212) 637-2474 / 2410 / 2601